UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| **REGINALD BRACK,** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 06-144-P-H |
| | ) | |
| **BLUE WATER MARINA, LLC,** et al., | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

### ORDER ON PLAINTFF'S MOTION FOR DETERMINATION OF ATTORNEY FEES

This lawsuit began in August 2006 as a simple action for breach of a commercial note, breach of a related agreement, and breach of fiduciary duty by one of the investment partners. On November 30, 2006, the Magistrate Judge granted an attachment and trustee process against the two limited liability company defendants, Blue Water Marina, LLC and Blue Water Estates, LLC. He denied such relief against the individual defendant Kevin B. Dean for failure to show a likelihood of success on the merits, and also denied relief against a nonparty, Island Park Estates, LLC. Order Approving in Part and Denying in Part Attachment and Trustee Process (Docket Item 14). The parties then settled the case. On January 12, 2007, they agreed to dissolution of the attachment and trustee process, and filed a stipulation of dismissal. The stipulation provided that among other things the defendants had paid to the plaintiff's attorney $68,232.13 "in claimed costs and expenses, including attorney fees, incurred by the Plaintiff

in endeavoring to collect or enforce the $1,750,000.00 Commercial Note dated February 2, 2006, including without limitation reasonable attorneys' fees." Stipulation of Dismissal 1-2 (Docket Item 16).  It went on to state:

> Defendants dispute the above-specified amount of costs, expenses, and attorneys' fees due to [the plaintiff] under said Commercial Note.[1] The parties hereby agree that this Court shall retain jurisdiction and hold a testimonial hearing pursuant to said Commercial Note to determine what amount of costs, expenses, and attorneys' fees the Defendants owe to the Plaintiff. If this Court determines that the total amount due for such costs and expenses, including reasonable attorneys' fees, exceeds $68,232.13, Defendants shall pay immediately to Plaintiff any such amount over and above $68,232.13. If this Court determines that the total amount due for such costs and expenses, including reasonable attorneys' fees, is less than $68,232.13, Plaintiff shall pay immediately to Defendants the difference between such total amount due and $68,232.13."

Id. at 2.  The stipulation also provided for accrual of 15% annual interest starting 10 days after the Court's order and for reasonable attorney fees incurred in trying to collect pursuant to the Court's order.  Id.

Following up on this agreement, on February 7, 2007, the *defendants* brought an "unopposed motion for determination of attorneys' fees," stating that the plaintiff's lawyer waived a testimonial hearing but wanted oral argument and that the defendants' lawyer preserved his right to request a testimonial hearing. Unopposed Mot. for Determination of Att'ys Fees ¶¶ 5-6 (Docket Item 18).  The Magistrate Judge held a telephone conference February 15, 2007, and issued a docket order that stated:

---

[1] The Note states: "Each Borrower and each Guarantor shall be liable for, and hereby agrees to pay, upon demand, any and all costs or expenses of any nature whatsoever incurred by the Lender in endeavoring to collect or enforce this Note against any party including, without limiting the generality of the foregoing, reasonable attorneys' fees and expenses." Commercial Note ¶ 6.

2

> Counsel advised that there is an outstanding claim for attorney fees in this case which has otherwise been concluded with the filing of a stipulation of dismissal. That being so, I confirmed that such fee claim is to be pursued by application filed in accordance with Local Rule 54.2 and that, when the application is fully briefed, it will be decided on the papers.

Docket Order of Feb. 15, 2007 (Docket Item 20). Thereafter, the lawyers had some further discussions about the fees, but each side assumed that the other side had the obligation to file the Rule 54.2 application. The plaintiff's lawyer had that belief, because he had already received the money requested for attorney fees and believed that the defendants needed to show why any of it should be returned; the defendants' lawyer had that belief, because it was the plaintiff's burden to establish that he was entitled to any fees. So nothing happened.

Then, on August 13, 2007, the defendants filed a motion for return of the $68,232.13 and dismissal of the application for fees, although admitting that they were responsible for monies spent in the Maine proceeding, and alleging that the entire attorney fees dispute was over collateral proceedings in Texas.[2] Defs.' Mot. for Enforcement of Stipulation of Dismissal and Mot. to Dismiss Pl.'s Claim for Att'ys Fees ¶¶ 6, 8 (Docket Item 22). The plaintiff objected, saying that the transfer of the $68,232.13 had become irrevocable with the defendants' failure to act sooner, and asserting that the defendants had admitted that the attorney fees accrued in Maine were reasonable. See Pl.'s Opp'n (Docket Item 24).

---

[2] Specifically, the plaintiff recorded in Texas a Memorandum of Rights concerning real estate owned by Blue Water Marina, LLC and by Island Park Estates, LLC, the third party as to which the Magistrate Judge had denied attachment and trustee process. See Pl.'s Mot. for Determination of Att'ys Fees 2 (Docket Item 38). In response to the filing of the Memorandum of Rights, the defendants and Island Park Estates filed a lawsuit against the plaintiff in Texas, alleging slander of title, tortious interference with a contract, fraud, and waiver. Id. at 2-3. The parties dispute whether the resulting attorney fees were recoverable under the attorney fee provision of this
*(continued on next page)*

3

On October 2, 2007, the Magistrate Judge issued a Recommended Decision on Motion for Enforcement of Stipulation of Dismissal and to Dismiss Plaintiff's Claim for Attorney Fees (Docket Item 26) in favor of the defendants, ruling that it was the plaintiff's obligation to file an application for attorney fees even though the plaintiff's lawyer had already received the $68,232.13 and the defendants had first moved for a determination of fees. The Magistrate Judge recommended that the entire amount be refunded to the defendants because of the plaintiff's failure to act. Id. at 4. The plaintiff moved for reconsideration, but the Magistrate Judge declined. Docket Entry 31. The plaintiff objected, and after granting a motion for a continuance, I held oral argument on December 10, 2007. At the hearing I expressed my amazement that the lawyers had not exchanged phone calls to clarify who would take the first step after the Magistrate Judge's Order of February 15, 2007, and my reluctance to determine the matter now solely as a matter of procedural default. I ordered the plaintiff to file a fee application and the defendants to respond. They now have done so.

The plaintiff claims far more than the $68,232.13 he has already received. See Pl.'s Mot. for Determination of Att'ys Fees 3. The defendants claim that they should receive a refund of the entire amount because of the plaintiff's procedural default or, in the alternative that the plaintiff is entitled to only $12,632, all the rest not covered under the Commercial Note because it is attributable to either the Texas proceedings or to litigation over the disputed attorney fees. Defs.' Response

---

Commercial Note.

and Opp'n to Pl.'s Mot. for Determination of Att'ys Fees (Docket Item 39). Neither party has requested a testimonial hearing at this stage.

I conclude that the plaintiff has not established that he is entitled to recover fees related to activities in Texas. I conclude that the plaintiff may recover fees that he incurred litigating the Maine proceeding, including those related to his effort to enforce the attorney fees clause of the Commercial Note. As a result, the reasonable attorney fees established for enforcing the Note are $28,532.04. I will address each of these issues in turn.

### *Texas proceedings*

It would not be unusual for a plaintiff, in order to enforce a judgment, to have to initiate ancillary proceedings in a foreign jurisdiction. Here, however, the plaintiff has not properly documented the necessity or the reasonableness of the steps he has taken. The plaintiff, as the fee applicant, "bears the burden of proving entitlement to an attorney fee." Weinberger v. Great Northern Nekoosa Corp., 801 F. Supp. 804, 807 (D.Me. 1992) (quoting 1 M. Derfner & A. Wolf, Court Awarded Attorneys Fees ¶ 9.02[4][c], at 9-24.6 (1991)). The plaintiff says in the argument portion of his legal memorandum that the Texas fees were reasonably incurred to collect on the Note, but he gives me no factual basis to reach that conclusion.[3] Thus, I do not award fees for the Texas proceedings, and I **DENY** the

---

[3] The plaintiff states: "One need only read the Texas Petition to conclude that it is the direct result of enforcement and collection actions on the part of [the plaintiff]." Pl.'s Mot. for Determination of Att'ys Fees 3. He also says that some of the efforts in Texas, including recording the Memorandum of Rights, were "to identify Texas assets of the Defendants and prevent their concealment or sale by the Defendants," id. at 2, and to "perform[] title examinations, review[] all of the loan documentation, and draft[] correspondence to grantees of assets that may have been purchased in violation of [the plaintiff's] right to consent to such sales by the Defendants." Id. That is not sufficient to permit me to find that the plaintiff's actions in Texas were reasonable and therefore
*(continued on next page)*

plaintiff's request for permission to file in this Court an additional claim for attorney fees at the conclusion of the Texas litigation. See Pl.'s Mot. for Determination of Atty's Fees 4.

### *Fees on fees*

The defendants have not challenged the reasonableness of the hourly rates in Maine, but they do argue that they are not liable for fees related to the dispute over attorney fees. Defs.' Response and Opp'n to Pl.'s Mot. for Determination of Att'ys Fees 5. "As a general rule, time expended on the fee issue is compensable in the fee award itself." 10 James Wm. Moore, Moore's Federal Practice § 54.190[2][a][iv] (3d ed. 2006). Here, the contract term provides: "Each Borrower and each Guarantor shall be liable for, and hereby agrees to pay, upon demand, any and all costs or expenses of any nature whatsoever incurred by the Lender in endeavoring to collect or enforce this Note against any party including, without limiting the generality of the foregoing, reasonable attorneys' fees and expenses." Commercial Note ¶ 6. This provision entitles the plaintiff to recover the cost of his efforts to enforce the Note, and this attorney fees entitlement is one of the terms of the Note. The fees attributable to litigating the attorney fees issue are part of the costs "incurred by the [plaintiff] in endeavoring to collect or enforce [the] Note." The plaintiff may recover these fees.

---

covered by the attorney fees provision of the Note. Attorney Goldberg's Jan. 16, 2007 fees affidavit documents his belief that the Texas civil action against the plaintiff "was a direct response to . . . efforts [in Texas] to 'collect or enforce [the] Note,' and is therefore part of the 'costs and expenses . . . incurred by the Lender in endeavoring to collect or enforce [the] Note.'" Goldberg Aff. ¶ 12 (Docket Item 24-2). This assertion fails to establish the essential point—whether the plaintiff's actions in Texas, including those that allegedly prompted the defendants' lawsuit, were reasonably necessary.

6

*Calculating the amount*

Determining the precise amount to which the plaintiff is entitled requires some further consideration (and calculation). I agree with the defendants that the plaintiff cannot recover the amounts billed by Attorney Conoly and Attorney Gonzales. The record includes no documentation suggesting that Conoly and Gonzales worked on anything other than the Texas actions.

The plaintiff seeks recovery for $39,981.54 of Attorney Goldberg's time and expenses. Attorney Goldberg worked on both the Maine and the Texas proceedings. The defendants have not objected to Attorney Goldberg's hourly rate, but they have submitted objections to hours billed on certain dates, provided in two exhibits. See Defs.' Response and Opp'n to Pl.'s Mot. for Determination of Att'ys Fees Exs. F, G.

The first exhibit identifies billing entries between August 10, 2006 and December 29, 2006 that the defendants allege relate to the Texas proceedings. The list includes billing entries that make some reference to the Texas proceedings, either explicitly (for example, Oct. 23, 2006: "Review Texas civil action brought by Island Park Estates, LLC") or implicitly (by referencing communications with the Texas attorneys). I conclude that the plaintiff has not carried his burden of establishing that, in fact, these entries relate to the Maine proceeding, not to the Texas actions. Some of the tasks listed under these entries may pertain to the Maine proceedings, but the plaintiff's documentation is not sufficiently detailed for me to determine which tasks and how much of the total amount billed. Rather than submitting "a 'full and specific accounting' of the

7

tasks performed, the dates of performance, and the number of hours spent on each task," Weinberger v. Great Northern Nekoosa Corp., 925 F.2d 518, 527 (1st Cir. 1992) (emphasis added), the submission lumps each day's diverse activities into a single billing entry. Each billing entry records the total number of hours and the total amount billed for the various tasks performed during the day in question. Because I cannot determine how much time was spent on a particular issue, I cannot allocate within each billing entry time spent on the Maine proceedings versus time spent on the Texas proceedings. Cf. Gratz v. Bollinger, 353 F. Supp.2d 929, 939 (E.D. Mich. 2005) (block billing prevented court from determining the number of hours spent on each discrete task and therefore whether the hours billed were reasonable); Brother v. Miami Hotel Investments, LTD., 341 F. Supp.2d 1230, 1237 (S.D. Fla. 2004) (same).

Thus, I sustain the defendants' objection to these fees and subtract from the fee award $11,449.50. See Hensley v. Eckerhart, 461 U.S. 424, 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."). This leaves $28,532.04 of Attorney Goldberg's fees and expenses.

The second exhibit lists several billing entries to which the defendants object because they relate to the plaintiff's efforts to recover his attorney fees. I have already concluded that the plaintiff may recover these fees so I will not subtract any of these amounts from the fee award.

I **REJECT** the Magistrate Judge's Recommended Decision. Although I certainly agree that Local Rule 54.2 contemplates that ordinarily the party seeking fees will file an application, this was not an ordinary case. The attorney fees had

already been transferred (not in escrow). The parties had agreed on a procedure. The defendants even filed a motion to determine the fees. Given that the case had settled, that the parties were trying to resolve the fee issue, that the plaintiff already had the money in question (and was not then seeking more) and that the defendants had assumed initial responsibility for seeking a fee determination, it was not wholly unreasonable for the plaintiff to conclude that the defendants had to continue to take affirmative steps to get a portion of the money back. (Certainly, however, the plaintiff is not entitled to more than the $68,232.13, even if fees for the Texas proceedings are recoverable, for the plaintiff took no previous steps to seek more than the $68,232.13.)

It is therefore **ORDERED** that the plaintiff may retain $28,532.04 and shall refund $39,700.09 to the defendants.

**SO ORDERED.**

**DATED THIS 29TH DAY OF FEBRUARY, 2008**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

9